UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MILOS LEUBNER,

            Plaintiff,

    v.

COUNTY OF LAKE, et al.,

            Defendants.

Case No.  18-cv-05654-PJH

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. No. 41

Before the court is defendant County of Lake's ("Lake County"), defendant Dennis Keithly's ("Keithly"), and defendant Michael Penhall's ("Penhall") (collectively, "defendants") motion to dismiss pro se plaintiff Milos Leubner's ("plaintiff") second amended complaint ("Dkt. 38" or "SAC"). Dkt. 41. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court **GRANTS** the motion for the following reasons.

## BACKGROUND

Plaintiff is a resident of Lake County, California. He and others who live at his residence purportedly use marijuana for medicinal purposes. On September 15, 2016, Lake County's Sheriff's department executed a search warrant at plaintiff's residence. As a result of that search, Lake County seized and destroyed marijuana plants located at plaintiff's residence. Plaintiff was also charged in state court with criminal violations under California state law for the unlawful possession, cultivation, and selling of marijuana. On May 16, 2017, the state authorities dropped those charges.

United States District Court
Northern District of California

1    **A.    Procedural History**

2          This action's procedural history is lengthy but important to understand the scope of

3    the claims at issue in the instant motion.  Plaintiff filed his original complaint on

4    September 14, 2018.  Dkt. 1.  On December 6, 2018, defendants filed a motion to

5    dismiss that complaint, Dkt. 15, which the court granted on February 15, 2019, Dkt. 26.

6    In its February 15, 2019 order, the court construed plaintiff's claims as brought under Title

7    42 U.S.C. § 1983 and dismissed those premised upon the Fifth and Ninth Amendments

8    with prejudice but allowed plaintiff the opportunity to amend those premised upon the

9    First, Fourth, Eighth, and Fourteenth Amendments.  Dkt. 26 at 12.

10          Plaintiff failed to timely file an amended complaint.  After issuing an order to show

11   cause, the court received two amended complaints—the first on or around May 3, 2019

12   (the "FAC"), Dkt. 35, and the second on or around May 20, 2019 (the "SAC"), Dkt. 38.

13   On May 22, 2019, in an order discharging its prior order to show cause, the court deemed

14   the SAC (Dkt. 38) the "operative complaint" and allowed plaintiff until June 5, 2019 to file

15   and serve any exhibits that he wished to incorporate into his pleadings.  Dkt. 39 at 2.  The

16   court timely received 45 pages of exhibits from plaintiff.  Dkt. 40.

17          Defendants filed the instant motion on June 21, 2019.  Dkt. 41.  On August 20,

18   2019, after multiple stipulations to extend plaintiff's time to oppose that motion, his failure

19   to timely do so, and his failure to timely respond to the court's August 7, 2019 order to

20   show cause for failure to oppose the motion, the court granted defendants' motion with

21   prejudice and entered judgment.  Dkt. 49; Dkt. 50.  Subsequently, on August 26, 2019,

22   plaintiff filed two documents: (1) his opposition to defendant's motion, Dkt. 51, and (2) his

23   response to the court's August 7, 2019 show cause order, Dkt. 52.

24          On September 19, 2019, plaintiff filed a motion to alter the court's August 20, 2019

25   order to dismiss.  Dkt. 54.  On October 18, 2019, apparently in support of his motion to

26   alter judgment, plaintiff filed a 43 page document captioned "(1) plaintiff's opposition to

27   defendant's response to pl.'s motion to alter or dismiss . . . (2) plaintiff's analysis of the

28   actual disadvantages of pro per litigant . . . (3) Plaintiff's offer of few additional new

United States District Court
Northern District of California

United States District Court
Northern District of California

1  evidential [sic] findings."  Dkt. 57.

2      On December 18, 2019, the court entered an order discharging its August 7, 2019

3  order to show cause, vacating judgment, and granting plaintiff's motion pursuant to Rule

4  60(b)(6).  Dkt. 58.  In that order, the court directed plaintiff "**to postmark** any renewed

5  opposition to defendants' motion to dismiss (Dkt. 41), ***including any argument relying***

6  ***upon his purportedly recently identified 'new evidence,***' by January 8, 2020" and

7  informed plaintiff that "[i]f [he] fails to timely postmark any such opposition, ***the court will***

8  ***rely upon his August 26, 2019 opposition*** (Dkt. 51)."  Dkt. 58 at 2 (bold in the original)

9  (bold italics added).  To date, plaintiff has not filed any such renewed opposition.

10      Accordingly, in analyzing the instant motion, the court largely bases its decision on

11  the following: (1) the SAC (Dkt. 38); (2) the additional exhibits timely filed in support of the

12  SAC (Dkt. 40);[1] (3) defendant's motion to dismiss the SAC (Dkt. 41) as well as its

13  associated request for judicial notice of the subject search warrant and its supporting

14  affidavit (Dkt. 41-1);[2] and (4) plaintiff's untimely opposition (Dkt. 51).

15      The court notes that plaintiff's opposition largely comprises various excerpted legal

16  authorities, news articles, portions of defendants' opening brief with in-line handwriting, a

17  bulleted "opposition" to Keithly's September 2016 affidavit in support of defendants'

18  request for the search warrant at issue, and a description of the events detailed in the

19  body camera recordings purportedly attached to the SAC.  Dkt. 51 at 1-28.  To the extent

20  possible, the court has construed any arguments discernable in this filing.

21  **B.**    **Factual Background**

22      On or around September 13, 2016, Keithly proffered a 20-page affidavit in support

23

24  ───────────────

25  [1] Plaintiff attached a USB drive that purportedly includes footage from the authorities' body cameras during the September 15, 2016 search.  While the court will consider all well-pled allegations of misconduct purportedly detailed on that drive, it has not and will not independently review its contents to decide this motion.  Such a review would entail security risks to the court's network incidental to downloading the drive's contents.

26

27  Further, plaintiff is responsible for advancing allegations and arguments in support of his position.  The court will not hunt through this material to identify allegations for plaintiff.

28  [2] <u>United States v. Howard</u>, 381 F.3d 873, n.1 (9th Cir. 2004) (judicially noticing court records in an underlying criminal case).

1   of a warrant to search plaintiff's residence and property, located at 5320 and 5323 Jamie

2   Lane, Kelseyville, California.  Dkt. 41-1.  On September 13, 2016, Lake County Superior

3   Court Judge Andrew S. Blum ("Judge Blum") approved and issued that warrant, id. at 4,

4   which officers of Lake County Sheriff's Department executed on September 15, 2016,

5   Dkt. 38 at 3-4.  The court further details the warrant and its underlying affidavit as

6   necessary below.

7          Prior to the September 15, 2016 search, "plaintiff and all the members of his

8   medical cannabis collective were lawfully cultivating cannabis to treat their serious

9   disorders and ills," purportedly "in accord with California State Law." Dkt. 38 at 4.  Over

10  the course of the September 15, 2016 search, plaintiff was "arrested" three times, id. at 9-

11  10, and unfairly interrupted by Keithly when providing answers to the officer's questions,

12  id. 10-11.  Plaintiff spent time in jail, id. at 16, although it is unclear when.

13         During or after the September 15, 2016 search, the authorities also "ejected"

14  plaintiff's adult daughter, Cleariana Leubner ("Cleariana"), from plaintiff's residence, id. at

15  17-18, and Keithly directed a private company to tow away plaintiff's vehicle, id. at 23.  At

16  some unspecified time (presumably following the search), Lake County declared his

17  residence "uninhabitable," id. at 16-17, and, on September 15, 2016, Penhall signed a

18  "Notice of Electrical Meter Disconnect" on county letter head, Dkt. 40-3 at 4.  Because of

19  the utility disconnection and uninhabitability declaration, plaintiff was forced to live and

20  sleep outdoors.  Dkt. 38 at 16-17.

21         On September 16, 2016, Keithly returned to and again entered plaintiff's residence

22  through his unlocked front door.  Dkt. 40 at 6.  By plaintiff's own acknowledgment, such

23  subsequent entry last approximately 45 seconds.  Id.  By defendants' characterization of

24  the body camera videos attached by plaintiff in support of his SAC (which the court will

25  not review), those videos show Keithly returning $1.76 and silver coins to a dresser

26  during the subsequent entry and that "no search [was] performed." Dkt. 41 at 7.  Plaintiff

27  did not dispute that characterization in his opposition.  Dkt. 51 at 2.

28         On September 19, 2016, authorities charged plaintiff with three criminal violations

4

1   of California Health and Safety Code §§ 11358-11360 for the unlawful possession,

2   cultivation, transportation, and selling of marijuana.  Dkt. 15-1 (defendants' prior request

3   for judicial notice of charges brought against plaintiff) at 11-12.  On May 16, 2017,

4   pursuant to a stipulation with authorities, plaintiff "forfeited" all items seized in the

5   September 15, 2016 search (except firearms) and the authorities dismissed all charges

6   against him, id. at 14; Dkt. 51 at 10.

**DISCUSSION**

**A.    Legal Standard**

9          A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

10   alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Rule 8

11   requires that a complaint include a "short and plain statement of the claim showing that

12   the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal "is

13   proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege

14   sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953,

15   959 (9th Cir. 2013).  While the court is to accept as true all the factual allegations in the

16   complaint, legally conclusory statements, not supported by actual factual allegations,

17   need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint

18   must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell

19   Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

20          As a general matter, the court should limit its Rule 12(b)(6) analysis to the

21   contents of the complaint, although it may consider documents "whose contents are

22   alleged in a complaint and whose authenticity no party questions, but which are not

23   physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

24   Cir. 2005); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can consider a

25   document on which the complaint relies if the document is central to the plaintiff's claim,

26   and no party questions the authenticity of the document"). The court may also consider

27   matters that are properly the subject of judicial notice, Lee v. City of L.A., 250 F.3d 668,

28   688–89 (9th Cir. 2001), exhibits attached to the complaint, Hal Roach Studios, Inc. v.

5

1   Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents
2   referenced extensively in the complaint and documents that form the basis of the
3   plaintiff's claims, No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding
4   Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

5   **B.   Analysis**

6   Title 42 U.S.C. § 1983 "provides a cause of action for the deprivation of any rights,
7   privileges, or immunities secured by the Constitution and laws of the United States."
8   Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990).  To state a claim under § 1983,
9   a plaintiff must allege the following: (1) he suffered a violation of a right conferred by the
10  Constitution or laws of the United States; and (2) such violation was committed by a
11  person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

12  **1.   Plaintiff Fails to State A Fourth Amendment Claim**

13  Plaintiff bases his Fourth Amendment claim upon the following purported acts: (1)
14  Keithly unlawfully entered plaintiff's property and seized his cannabis on September 15,
15  2016; (2) Lake County and Keithly unlawfully arrested plaintiff three times during the
16  search of his property on September 15, 2016; (3) Keithly unlawfully entered plaintiff's
17  property on September 16, 2016; and (4) despite plaintiff's requests, Keithly failed to
18  provide him with a copy of the warrant authorizing the search of his premises.

19  **a.   The September 15, 2016 Search and Seizure**

20  Plaintiff alleges that defendants unconstitutionally entered his property and seized
21  his cannabis on September 15, 2016 because the search warrant forming the basis for
22  such entry was invalidly issued.  Dkt. 38 at 4, 7.  To support his assertion that the warrant
23  was invalid, plaintiff advances two theories: (1) Keithly failed to apprise Judge Blum of all
24  the relevant facts underlying his request for the warrant; and (2) the warrant itself lacks
25  the requisite specificity.  The court analyzes each theory in turn.

26  **i.   Judicial Deception Theory**

27  Plaintiff alleges that Keithly failed to disclose to Judge Blum that County of Lake
28  Ordinance No. 2997 ("Ordinance 2997" or "Article 72," as referred to by plaintiff) allowed

United States District Court
Northern District of California

certain procedures for residents to abate their medical marijuana cultivation, Dkt. 38 at 11, and that, under California state law, certain persons could lawfully use marijuana, id. at 24.  Further, plaintiff alleges that the purportedly unlawful activity cited by Keithly in his affidavit was no different than the numerous other "illegal acts" that "most of it not all [the] general population is daily participating in," id., thereby suggesting that Keithly did not observe anything particularly suspicious about plaintiff's residence.

Plaintiff rhetorically adds that "[a]ccording to Keithly the criminal mind shall be recognized by owning and using garden hoses, shovels, cellphones, keys . . . and many other insane examples of Keithly's malfunctioning mind," id., and goes on to alleges that Keithly failed to provide any evidence that plaintiff had engaged in marijuana sales, Dkt. 38-1 at 5, or any other precondition that would justify issuing the subject warrant, Dkt. 38 at 24.  Instead, plaintiff asserts, Keithly acted out of a "long-standing grudge" against him "for an imaginary offense committed to him by this plaintiff five years ago," Dkt. 38 at 9, 11; Dkt. 40 at 2 (description of body camera segment two as showing "Keithly express[ing] his 5 years old grudge against plaintiff and why.")

The United States Supreme Court has long recognized that an affidavit proffered in support of a requested search warrant is presumed valid.  Franks v. Delaware, 438 U.S. 154, 171 (1978).  As this court has previously acknowledged, to overcome that presumption, the party challenging the search warrant must satisfy the following:

> "(1) make a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and
>
> (2) show that the allegedly false statement [was] necessary to the finding of probable cause."  Dkt. 26 at 8.

Accordingly, any allegations of deliberate falsehoods in the subject affidavit "must be accompanied by an offer of proof" and such allegations "should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily

United States District Court
Northern District of California

explained." <u>Franks</u>, 438 U.S. at 171.

Here, plaintiff fails to satisfy the requisite showing.  As an initial matter, while the court agrees that Keithly's purported five-year "grudge" against plaintiff may allow it to infer that Keithly acted with requisite mental state to satisfy the above referenced substantial preliminary showing, plaintiff fails to identify any false statement actually made by Keithly in his affidavit.  Indeed, based on the court's review of that affidavit, Keithly makes **no** representation about Ordinance 2997.  To the extent plaintiff posits that Keithly had some affirmative obligation to include such a representation in the subject affidavit, plaintiff fails to proffer any authority in support of such a position. Acknowledging any such position would be in direct tension with this court's prior recognition that "no part of Article 72 suggests that it, or its accompanying 'Abatement Procedures,' displace *state criminal laws* regarding the possession, cultivation, transportation, or selling of marijuana."  Dkt. 26 at 6 (emphasis added).  Absent such suggestion, the court lacks any basis to impose an affirmative obligation upon Lake County authorities to disclose Ordinance 2997 in the course of obtaining a search warrant for suspected criminal activity.

Further, plaintiff's argument that Keithly "mistakenly informs the Judge that Proposition 215 demands of the growers to post [their] medical marijuana doctor's recommendation," Dkt. 38 at 8, ignores the actual declarations made by Keithly in his affidavit, which, in relevant part, include the following:

- "On 07/28/2016, Sergeant Herdt conducted aerial surveillance in the area of Jamie Lane . . . While flying over the property located at [plaintiff's addresses], Sergeant Herdt located a large outdoor marijuana grow containing no less than 45 large marijuana plants.  ***Sergeant Herdt did not see any marijuana recommendations posted*** . . ." Dkt. 41-1 at 15 (emphasis added).[3]

---

[3] Plaintiff summarily challenges Sergeant Herdt's observations as "simply impossible to collect at flying at 2,000 feet."  Dkt. 51 at 3.  That criticism does not qualify as a substantial preliminary showing of a false statement.

United States District Court
Northern District of California

- "On 09/13/2016, I conducted surveillance in the area of Jamie Lane. I saw a large marijuana grow containing no less than 45 marijuana plants in the field at 5323 Jamie Lane and across the road at 5320 Jamie Lane. . . . *I did not observe any marijuana recommendations*." Id. at 16 (emphasis added).

- "Based on my training and experience, I know that marijuana is a controlled substance and is illegal to possess or cultivate *without a Medicinal Marijuana Recommendation as prescribed in Proposition 215 and Senate Bill 420.* Based upon my investigation, I believe marijuana is actively being possessed at [plaintiff's addresses], *outside the parameters of California law under Proposition 215 and Senate Bill 420*." Id. at 17 (emphasis added).

Contrary to plaintiff's assertion, Keithly did not state that California state law requires a medical marijuana user to post his or her recommendation. Rather, he states (1) he observed no recommendation posted at plaintiff's residence and (2) possession of marijuana absent a recommendation is a criminal offense. However read, those statements do not support plaintiff's assertion. Of course, the above statements also directly contradict plaintiff's more general allegation that Keithly omitted potentially relevant state laws concerning plaintiff's right to possess marijuana for medicinal purpose. Accordingly, plaintiff has failed to substantiate the first theory of judicial deception.

### ii. Insufficiently Particularized Warrant Theory

Plaintiff summarily argues that the warrant "is also invalid on its face because it does not command what person or persons should be searched or arrested, under what laws, and in what specific places." Dkt. 38 at 8.[4]

---

[4] Plaintiff further alleges that Keithly failed to provide him with a "summons" that satisfied certain purported requirements under California Penal Code § 813(b) concerning arrest warrants. Id. at 10. Because plaintiff's allegations plainly show that his third arrest was made incidental to a search (*not* a separately issued warrant for arrest) and plaintiff fails to otherwise explain the legal relevance of these requirements to the incidental arrest actually alleged, this allegation, too, fails to substantiate plaintiff's Fourth Amendment claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

1      The court disagrees. As an initial matter, plaintiff's first criticism—i.e., that it fails to

2  specify any person subject to search or arrest—misses the point.  Plaintiff failed to proffer

3  any plain allegation that he himself was searched.  Given that failure, whether the warrant

4  described him as subject to search is irrelevant.

5      With respect to plaintiff's second criticism, the face of the warrant plainly specifies

6  California Penal Code Section 1524 as the statute authorizing the subject search and

7  seizure.  Dkt. 41-1 at 4 ("Dennis Keithly swears under oath that . . . and does believe that

8  the property described below is lawfully seizable pursuant to Penal Code Section 1524 . .

9  .").  That affidavit then goes on to cite California Health and Safety Code § 11359 as the

10  grounds for plaintiff's suspected criminal violation.  Id. at 21 ("I believe that probable

11  cause exists for the issuance of such warrant and that a search of the described location

12  and vehicles will reveal evidence of the felony violation of 11359 H&S of California Health

13  and Safety Code . . .").  Plaintiff's second criticism, then, is misplaced.

14      With respect to plaintiff's third criticism, the warrant attaches, in relevant part, an

15  "Exhibit A," which it defines as the descriptions of the places subject to search.  Dkt. 41-1

16  at 4.  In particular, Exhibit A specifies the following: "1) the premises located at 5323

17  Jamie Lane, Kelseyville, County of Lake, State of California . . . including any and all

18  rooms, attics, basements, containers and other parts therein, the surrounding ground and

19  any and all yards, garages, carports, outbuildings, travel trailers, storage areas, trash

20  container and storage containers, of any kind located thereon. . . . 2) the premises

21  located at 5320 Jamie Lane, Kelseyville, County of Lake, State of California . . . including

22  any and all rooms . . .  and storage containers, of any kind located thereon." Id. at 22.

23  Accordingly, plaintiff third criticism is also misplaced.  Given the above, plaintiff failed to

24  substantiate the second theory that the warrant was insufficiently particularized.

25          **b.      The September 15, 2016 "Arrests"**

26      Plaintiff alleges that he was "arrested" three times during the September 15, 2016

27  search.  First, an unnamed deputy "arrested" (without more) plaintiff on his front porch.

28  Dkt. 38 at 9.  Second, Keithly handcuffed plaintiff on that same porch and told plaintiff

that he was being detained.  Id. at 10.  Third, Keithly again "arrested" plaintiff at some unspecified time following his purported first and second "arrests." Id. at 10.  While plaintiff does not expressly state it, he suggests that each of these acts were unconstitutional because they occurred as an incident to an invalidly issued warrant.

### i.       The First and Second Acts of Restraint

In Michigan v. Summers, "the [United States Supreme] Court defined an important category of cases in which detention is allowed without probable cause to arrest for a crime.  It permitted officers executing a search warrant 'to detain the occupants of the premises while a proper search is conducted.'"  Bailey v. United States, 568 U.S. 186, 193 (2013) citing Michigan v. Summers, 452 U.S. 692, 705 (1981).  "The rule announced in Summers allows detention incident to the execution of a search warrant 'because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial." Bailey, 568 U.S. at 193.  While limiting the scope of the Summers' detention rule to the premises subject to search, the United States Supreme Court in Bailey nonetheless affirmed it. Id. at 202 ("Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake. Once an individual has left the immediate vicinity of a premises to be searched, however, detentions must be justified by some other rationale.").

Here, plaintiff's first two alleged acts of restraint (which, if anything, were detentions) fall squarely within the rule set forth in Summers.  Accordingly, however plaintiff may label the legal import of those acts, they do not provide a basis for his Fourth Amendment claim.

### ii.       The Third Act of Restraint

As this court recently recognized "[a] claim of unlawful arrest is cognizable under § 1983 for violation of the Fourth Amendment's prohibition against unreasonable search and seizure if the complaint alleges that the arrest was without probable cause or other justification."  Cook v. City of Antioch, 2019 WL 5788509, at *1 (N.D. Cal. Nov. 6, 2019).

11

1  Relatedly, "a claim of unlawful detention/imprisonment is cognizable under § 1983 for

2  violation of the Fourteenth Amendment's guarantee of due process if the arrest was

3  without probable cause or other justification and the defendant knew or should have

4  known that plaintiff was entitled to release." Id.

5      Here, plaintiff fails to allege a claim for unlawful arrest.  Significantly, plaintiff fails

6  to explain how or why his arrest was without probable cause.  To the contrary, such

7  arrest (assuming custody occurred) flowed from defendants acting upon a warrant signed

8  by a judicial officer, Judge Blum.  Dkt. 41-1 at 4.  To obtain that warrant, Keithly provided

9  a "Statement of Probable Cause," expressly declaring the following:

> "On 09/13/2016, I conducted surveillance in the area of Jamie
> Lane.  I saw a large marijuana grow containing no less than 45
> marijuana plants in the field at 5323 Jamie Lane and across the
> road at 5320 Jamie Lane.   The marijuana plants were
> approximately seven feet tall and in the late flowering stage.  I
> did not observe any marijuana recommendations . . .[and] . . .
>
> Based on my training and experience and the information
> gathered in this investigation, I feel there is probable cause to
> believe, and I do believe there is an ongoing criminal
> conspiracy to possess, cultivate, and sell marijuana located at
> the premises described in Exhibit A  [which, details plaintiff's
> addresses on Jamie Lane]." Id. at 16-17.

17      In light of these declarations, the court concludes that plaintiff not only failed to

18  allege a lack of probable cause but also—by the SAC's repeated recitation and

19  characterization of Keithly's affidavit (Dkt. 38 at 7), which, consequently, is incorporated

20  by reference into the SAC—effectively barred himself from claiming the lack of probable

21  cause necessary to substantiate his claim for unlawful arrest.  Moreover, even by

22  plaintiff's own allegations, defendants did, in fact, identify and seize "all" marijuana on

23  plaintiff's property, which lends credibility to Keithly's attested belief that plaintiff was

24  engaged in the suspected criminal conduct.  Dkt. 38 at 4.

25      While plaintiff strenuously cites People v. Kelly, 47 Cal.4th 1008 (Cal. 2010) and

26  People v. Mower, 28 Cal.4th 457 (2002) for the proposition that his status as an

27  authorized medical marijuana user exempts him from arrest, he fails to provide any

28  response to defendants' citation to Kelly's qualification that "[t]he [Compassionate Use

12

Act] does not grant immunity from arrest . . . so long as the authorities have probable cause to believe that possession or cultivation has occurred, law enforcement officers may arrest a person for either crime regardless of the arrestee's having a physician's recommendation or approval." Dkt. 41 at 13 (citing Kelly, 47 Cal.4th at 1013).  Given the above, plaintiff has failed to state an unlawful arrest claim based upon his third restraint.[5]

c.     **The September 16, 2016 Entry**

Plaintiff alleges that Keithly unlawfully entered his property on September 16, 2016 because he lacked any warrant to support such entry and no exigent circumstances existed to justify it.  Dkt. 38 at 27; Dkt. 40 at 6 (description of body camera segment ten as showing "Keithly enter[ing] plaintiff's residence [through the] front door [which] is unlocked").  Such entry occurred for approximately 45 seconds.  Id.  According to defendants' characterization of the videos attached by plaintiff in support of his SAC, which plaintiff does not dispute in his opposition, Dkt. 51 at 2, Keithly returned $1.76 and silver coins to a dresser during such entry but "no search was performed."  Dkt. 41 at 7.

Plaintiff further alleges that Keithly's stated justification for entering plaintiff's residence on September 16, 2016—namely to "secure" it—is pretextual because, despite that statement, Keithly did not "check the window in the bedroom for it's being closed." Id.  Plaintiff suggests that Keithly should have known about that open window because, during the September 15, 2016 entry, his Spanish speaking neighbors observed (apparently within earshot of the authorities' body cameras) that the window was "the best way to enter the house."  Id.

In their opening brief, defendants proffer three arguments in response to this claim, two of which the court finds persuasive.  First, defendants argue that this claim is barred by the statute of limitations and does not relate back to the conduct complained of

---

[5] In his SAC, plaintiff alleges that he suffered an Eighth Amendment violation in connection with "the time Plaintiff spent in County jail."  Dkt. 38 at 16.  Given that he failed to allege circumstances suggesting cruel and unusual treatment during the imprisonment following his purported arrest, the court dismisses any Eighth Amendment claim.

in plaintiff's initial September 14, 2018 complaint.  Dkt. 41 at 15-17.  Plaintiff fails to proffer any response in his opposition.  Such failure itself warrants this claim's dismissal.

Regardless, even if this court were to look past that failure in light of the relatively low standard for relation back under Rule 15(c)(1)(B), this claim still fails because plaintiff does not allege any search or other harm that resulted from Keithly's subsequent entry. To the contrary, as characterized by defendants (and not contested by plaintiff), Keithly's body camera video shows that he entered plaintiff's residence for 45 seconds **to return** $1.76 and certain silver coins and also ensure that he left the residence "secure," presumably from the prior day's authorized search.  Nothing about those circumstances allows this court to infer that plaintiff suffered any actionable injury as a result of the subsequent entry. Given that, plaintiff's Fourth Amendment claim premised upon the September 16, 2016 entry separately fails on this ground.

As a backstop, defendants add that qualified immunity protects Keithly from any liability that might result from his subsequent entry.  Dkt. 41 at 18.  While the rationality of that doctrine is, perhaps, the subject of much dispute, the court agrees.  Significantly, in his opposition, plaintiff failed to identify "a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation under similar circumstances." District of Columbia v. Wesby, 138 S. Ct. 577, 591 (2018).  This court also refuses to find that the circumstances surrounding the subsequent entry qualify as "an 'obvious case'" of a constitutional violation "where 'a body of relevant case law' is not needed."  Id.  Accordingly, even if the court were to conclude that plaintiff stated a Fourth Amendment violation premised upon the unauthorized September 16, 2016 entry, Keithly would, nonetheless, be entitled to qualified immunity.  Accordingly, the court dismisses any Fourth Amendment claim premised upon this entry.[6]

---

[6] Defendants' remaining argument—that Keithly's subsequent entry is justified under the reasonable continuation of a prior search rule, Dkt. 41 at 17—lacks merit.  As defendants themselves acknowledge, "[n]o search was performed" during the September 16, 2016 entry.  Id. at 7.  Given that characterization, the court struggles to understand how the subsequent entry could, therefore, qualify as a "continuation" of a prior search.

United States District Court
Northern District of California

United States District Court
Northern District of California

### d.    Failure to Provide a Copy of the Warrant

Plaintiff alleges that, despite his requests, Keithly failed to provide him with a copy of the warrant authorizing the search of his premises.  Dkt. 38-1 at 4; Dkt. 40 at 2 (description of body camera segment two as showing "plaintiff request[ing] the copy of search and arrest warrant – Keithly promises to show it to him but never does.").

In their opening brief, defendants cite United States v. Silva, 247 F.3d 1051 (9th Cir. 2001) for the proposition that "[i]n California, 'there is no statutory or constitutional requirement that a search warrant be exhibited as a prerequisite to execute it.'" Dkt. 41 at 18-19 (citing 247 F.3d at 1058).  In his opposition, plaintiff fails to contest Silva's applicability here or otherwise advance any argument based upon controlling authority to support the position that authorities executing a warrant issued under California state law are subject to additional requirements than those under federal law.  Dkt. 51.  As a result, the court dismisses plaintiff's Fourth Amendment claim to the extent it is premised upon defendants' purported failure to provide plaintiff with a copy of the warrant during the September 15, 2016 search.

### 2.    Plaintiff Fails to State a First Amendment Claim

Plaintiff premises his First Amendment claim upon the following alleged misconduct and theories: (1) Keithly unfairly questioned and interrupted him during his September 15, 2016 restraints; (2) Ordinance 2997 is facially invalid; (3) Lake County's failure to allow the public physical access to local ordinances at the county building; and (4) Keithly "cancelled" plaintiff's right to a hearing before Lake County's board of supervisors.

### a.    Interruption during Questioning

Plaintiff alleges that "during the interview," Keithly "demanded answer from plaintiff to [a] number of questions" but, "when plaintiff attempted to answer truthfully according to his own opinion, [Keithly] would stop his speech and tried to substitute his own version [citing attached Disk No. 2]."  Dkt. 38 at 10-11; Dkt. 40 at 2 (description of body camera segment two as showing Keithly "asking questions of plaintiff Keithly gets angry and

1  stops plaintiff from answering when the plaintiff [sic] answers don't meet Keithly's

2  expectations.").

3        Plaintiff fails to identify any controlling authority that supports the viability of this

4  theory as a cognizable First Amendment Violation.  The only authority presented to the

5  court that addresses this issue, cited by defendant, is a Southern District of Florida

6  magistrate judge report and recommendation denying a First Amendment claim based

7  upon the plaintiff speaker's purported interruption during public comments at a town hall

8  meeting, which the Eleventh Circuit summarily affirmed.  Charnley v. Town of South Palm

9  Beach, 2015 WL 12999749, at *7 (S.D. Fla. March 23, 2015), report and

10 recommendation adopted sub nom. Charnley v. Town of S. Palm Beach Fla., 2015 WL

11 12999750 (S.D. Fla. Apr. 9, 2015), aff'd, 649 F. App'x 874 (11th Cir. 2016).  Given that

12 plaintiff failed to proffer any authority to support the viability of this theory as a cognizable

13 basis for a constitutional violation (and the court itself does not see an obvious one),

14 plaintiff cannot state a First Amendment claim on its basis.

15                    **b.    Facial Invalidity of Ordinance 2997**

16       Plaintiff alleges that Ordinance 2997 is facially invalid because, "as written," it

17 "purposely misleads the citizenry at large regarding the actual lawful situation as it exists

18 at the level of the State of California."  Dkt. 38 at 19, 25.  Under plaintiff's theory, the

19 common will of the people is the foundation of all authority, that common will was

20 reflected in their adoption of Proposition 215, which is codified at California Health and

21 Safety Code § 11362.50, and Ordinance 2997 somehow undermines that section.  Id. at

22 19, 25-26.  Plaintiff asserts that Ordinance 2997 attempts to "muddy up the waters" by its

23 detailing "threats and selective depressive half-truths or outright lies to delude the public's

24 interest" for the purpose of allowing Lake County, in concert with large corporations, to

25 "monopolize" cannabis cultivation.  Id. at 20. Plaintiff further notes that Ordinance 2997

26 "creates a vague law by (1) omitting the meaning of [California Health and Safety Code

27 Sections] 11362.77 and 11362.50 . . [and] (2) including two separate and mutually

28 exclusive ways of solving the county's assumed assumption of guilt of medical marijuana

United States District Court
Northern District of California

16

patients and cannabis growers." Dkt. 38-1 at 2-3.[7]

Here, as an initial matter, plaintiff fails to identify which provisions in Ordinance 2997 contain the alleged misstatements noted above or which particular acts Lake County has taken to consolidate its control over the local marijuana industry.  Absent any such detail, the court is not in a position to evaluate the validity (or lack thereof) of his criticisms of Ordinance 2997.  On this basis alone, plaintiff fails to allege a cognizable First Amendment claim premised upon the ordinance's purported invalidity.

Still more fatal to this claim, plaintiff's criticism of Ordinance 2997 appears to boil down to the assertion that the ordinance misleads the public about the status of certain California state laws governing the possession and use of medicinal marijuana.  For purposes of stating an actionable First Amendment violation, that criticism has a gaping hole—namely, it fails to identify how or why Ordinance 2997 regulates *speech*.  Absent such identification, the court is left to infer that plaintiff is complaining about the ordinance's effect upon his ability to grow and use medicinal marijuana.  Because "it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate the First Amendment even applies," Clark v. Community for Creative Non-Violence, 468 U.S. 288, 294, n.5 (1984), and plaintiff has failed to proffer any such demonstration, the court dismisses his First Amendment claim to the extent it is premised upon Ordinance 2997's purported facial invalidity.

### c.   Failure to Publicly Expose County Ordinance

Plaintiff further alleges that Ordinance 2997 is invalid because Lake County fails to "publicly make available" a "hard copy of the Book of County Ordinances where residents could find the answers to their questions."  Dkt. 38 at 21.  Plaintiff relies upon this alleged

---

[7] Plaintiff adds that these two ways involve "either destruction of medical marijuana plants by Task Force or process initiated by posting Notice of Abatement and follow up, as such are the laws which are illegal under substantive due process of the Fifth and Fourteenth Amendments."  Id.; Dkt. 40-6 at 6.  To the extent plaintiff is claiming that Ordinance 2997 violates his substantive due process rights because it allows Lake County a non-criminal option to address marijuana cultivation, such claim is underdeveloped.  In any event, as previously recognized, the court finds no reason to conclude that the ordinance was intended to displace otherwise applicable criminal law.

United States District Court
Northern District of California

1   failure to show that Lake County "knowingly" and "unreasonably" deceives its residents

2   about the scope of their rights under California state law.  Id.

3          Plaintiff again fails to identify any controlling authority to support the viability of this

4   theory as a cognizable First Amendment violation.  The only authority presented to the

5   court that addresses this issue, again cited by defendant, recognizes that "[t]here is no

6   First Amendment right of access to public information."  Foto USA, Inc. v. Board of

7   Regents of Univ. System of Florida, 141 F.3d 1032, 1035 (11th Cir. 1998).  Because

8   plaintiff failed to proffer any authority to support the viability of this theory as a cognizable

9   basis for an actionable First Amendment violation, the court grants defendants' motion to

10  dismiss plaintiff's First Amendment claim to the extent it is based upon this theory.

### d.     Right to a Hearing Under Ordinance 2997

12         Plaintiff alleges that Keithly "cancelled" his right to a hearing before the Lake

13  County board of supervisors.  Dkt. 38 at 11, 13.  Plaintiff further alleges that he appeared

14  before that board to discuss the seizure and destruction of his cannabis two months after

15  the September 15, 2016 entry "but was completely ignored."  Id.

16         Here, plaintiff's First Amendment claim under this theory again misses the point.

17  As an initial matter, in its February 15, 2019 order, the court recognized that the warrant

18  giving rise to plaintiff's September 15, 2016 arrest "was authorized because there was

19  probable cause to believe the marijuana was used as the means of committing a felony

20  and [plaintiff] was charged for the possession, cultivation, transportation, or selling of

21  marijuana in violation of §§ 11358-60 of the California Health and Safety Code.  Article 72

22  neither addresses felonies nor §§ 11358-60 of the California Health and Safety Code.

23  And no part of Article 72 suggests that it, or its accompanying 'Abatement Procedures,'

24  displace state criminal laws regarding the possession, cultivation, transportation, or

25  selling of marijuana." Dkt. 26 at 6.

26         In their opening brief, defendants assert that "the SAC does not add any

27  allegations that changes this analysis or conclusions." Dkt. 41 at 10.  Plaintiff fails to offer

28  any response to this assertion.  Again, the court agrees with defendants.  Keithly's

United States District Court
Northern District of California

18

1    affidavit states that the search warrant sought evidence of a felony violation of California

2    Health and Safety Code § 11359.  Dkt. 41-1 at 20.  Because that section of state law is

3    distinct from any procedures separately afforded by the local ordinance, plaintiff fails to

4    allege a cognizable First Amendment claim premised upon his purported deprivation of a

5    hearing under that ordinance.  Accordingly, the court dismisses plaintiff's First

6    Amendment claim to the extent it is based upon this theory.

### 3.    Plaintiff Fails to State a Fourteenth Amendment Due Process Claim

8         "The Fourteenth Amendment protects individuals against the deprivation of liberty

9    or property by the government without due process. A section 1983 claim based upon

10   procedural due process thus has three elements: (1) a liberty or property interest

11   protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack

12   of process."  Portman v. Cty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).

13        Plaintiff premises his Fourteenth Amendment claim upon the following alleged

14   misconduct and theories: (1) Lake County and Keithly failed to provide plaintiff with the

15   opportunity to comply with the medical cannabis abatement procedures detailed under

16   Ordinance 2997; (2) Lake County's post-September 15, 2016 decision to declare his

17   residence "uninhabitable" and terminate his electricity and, similarly, allow Keithly to

18   wrongfully tow his vehicle; (3) defendants improperly "ejected" his daughter from his

19   residence; (4) Keithly failed to provide Judge Blum certain "exculpatory evidence" when

20   seeking the warrant; and (5) plaintiff was deprived of a pretrial hearing in connection with

21   his criminal proceeding.

### a.    Defendants' Alleged Failure to Follow the Ordinance

23        Plaintiff alleges that Ordinance 2997 provides a detailed set of procedures

24   governing the abatement of medical cannabis at risk of creating a public nuisance.  Dkt.

25   38 at 13.  Plaintiff alleges that instead of initiating the abatement process outlined under

26   that article, defendants improperly raided and destroyed plaintiff's medical cannabis in

27   violation of a previously imposed injunction on summary unnoticed seizures of medical

28   cannabis by this court in Allen v. County of Lake, 14-3934 (N.D. Cal.).  Id. at 13-14.

United States District Court
Northern District of California

1    Related to his allegation that defendants failed to trigger the process purportedly outlined

2    in the ordinance, plaintiff also alleges that defendants denied him "a chance of

3    appearance and a full hearing before the Board of Supervisors." Id. at 13.  Among the

4    exhibits supporting the SAC, plaintiff provides what appears to be an excerpt of

5    Ordinance 2997's service of notice provision and handwrites in "NOTICE WAS NEVER

6    SERVED!" Dkt. 40-4 at 7.

7         Again, this claim misses the point.  Judge Blum issued the subject search warrant

8    in connection with plaintiff's suspected violation of certain criminal statutes.  As this court

9    previously reasoned, "Article 72 neither addresses felonies nor §§ 11358-60 of the

10   California Health and safety Code.  And no part of Article 72 suggests that it, or its

11   accompanying 'Abatement Procedures,' displace state criminal laws regarding the

12   possession, cultivation, transportation, or selling of marijuana."  Dkt. 26 at 6.  In both his

13   SAC and opposition, plaintiff failed to proffer any response showing that, when adopting

14   Ordinance 2997, Lake County intended to displace California state criminal law. Absent

15   any such showing, plaintiff cannot assert that he was owed any process under Ordinance

16   2997 in the first instance.  On this ground alone, plaintiff cannot state a Fourteenth

17   Amendment claim (or any other constitutional violation) premised upon defendants'

18   purported failure to initiate the ordinance's abatement procedures.

19        Separately, in his SAC, plaintiff describes an "Exhibit 5" detailing "91 marijuana

20   plants destroyed (DISPUTED BY Plaintiff)" as among the list of property seized during

21   the September 15, 2016 entry.  Dkt. 38-1 at 1.  As this court noted in its prior order,

22   "Ordinance 2997 'allows the summary abatement of marijuana cultivation that violates a

23   limited number of specific provisions within the Ordinance . . . For example, the County

24   may summarily abate the nuisance if more than 6 mature or 12 immature plants are

25   cultivated on parcels larger than one acre . . ." Id. at 6 citing Ordinance 2997 at Article

26   72.5(a), 72.8.

27        Citing a similar document attached to plaintiff's then-existing operative pleading,

28   the court concluded that "the Article 72 procedures that plaintiff relies upon may not apply

20

at all to the present circumstances." Dkt. 26 at 6.  Given that plaintiff has essentially

included the exact same allegation that calls into question the ordinance's application to

his cultivation practices in the first instance, and, more importantly, also failed to explain

why such practices do not fall within the ordinance's summary abatement procedures,

plaintiff has not shown the deprivation of an interest or process owed to him under

Ordinance 2997.   Accordingly, the court dismisses any Fourteenth Amendment claim

premised upon defendants' purported failure to initiate the ordinance's abatement

procedures.

### b.        Other Post-September 15, 2016 Acts by Defendants

Plaintiff alleges that, following the purportedly unconstitutional September 15,

2016 search, Lake County took various actions concerning his residence that were

harmful to his welfare. Dkt. 38 at 16-17.  Plaintiff fails to specify which of his rights were

violated as a result of these actions.  The court analyzes each action in turn.

### i.        Disconnection of Electrical Supply and Declaration of Uninhabitable Residence

First, plaintiff alleges that Lake County improperly disconnected his electricity and

declared his residence "UNINHABITABLE," thereby "effectively forcing [him] to sleep and

live outdoors without any life support necessities" such as using "the bathroom or find[ing]

something to eat." Dkt. 38 at16-17.  Plaintiff appears to allege that Lake County took

these actions without requisite notice (electricity termination) and failure to provide the

correct address (uninhabiltability).  Id. at 17.

Plaintiff assigns liability to Penhall for terminating plaintiff's electricity because

Penhall signed the notice of electricity disconnection (Dkt. 40-3 at 4) without any

evidence of the existence of an immediate danger.  Dkt. 38 at 17.  According to plaintiff,

Penhall "acted on doing a favor" when signing the notice but concedes that such unfair

treatment "can only be determined by way of future discovery."  Id.  Plaintiff fails to

identify any other basis for that allegation.  Similarly, plaintiff also alleges that Keithly is

liable for "directly or indirectly ejecting plaintiff from his own home," id. at 18, claims that

United States District Court
Northern District of California

1   Keithly "requested [Director Freedman] and Penhall . . . to manufacture a reason for

2   ejecting this plaintiff from his home for an infinite period of time," id. at 23.  To support

3   such coordination, plaintiff cites Lake County's notice of uninhabitability's statement that

4   its declaration was prompted "on the request of Sheriff's Department," which Keithly was

5   a part of.  Id.

6       The United States Supreme Court in Hudson v. Palmer, 468 U.S. 517 (1984) held

7   that "an unauthorized intentional deprivation of property by a state employee does not

8   constitute a violation of the procedural requirements of the Due Process Clause of the

9   Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.

10  For intentional, [as well] as for negligent deprivations of property by state employees, the

11  state's action is not complete until and unless it provides or refuses to provide a suitable

12  post-deprivation remedy." 468 U.S. at 533.

13      Here, plaintiff's first theory in support of this purported due process claim rests

14  upon alleged misconduct by Keithly and Penhall.  Both these individuals are government

15  employees.  "California Law provides an adequate post-deprivation remedy for any

16  property deprivations." Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing the

17  then-existing California Government Code §§ 810-895, presently titled "Division 3.6:

18  Claims and Actions Against Public Entities and Public Employees).  While defendants

19  cited Barnett in their opening brief for this exact proposition, Dkt. 41 at 19, plaintiff failed

20  to refute its applicability here.  Accordingly, plaintiff cannot state a claim for a due process

21  violation premised upon the alleged wrongful termination of his residence's electricity and

22  declaration of its uninhabitability.  As a result, the court dismisses any constitutional claim

23  to the extent it rests upon such alleged misconduct

24              ii.         Towed Vehicles

25      Second, plaintiff alleges that, at some unspecified time after the September 15,

26  2016 entry, Keithly sought to punish plaintiff by directing a private company to tow away

27  his lawfully parked vehicles.  Dkt. 38 at 23; Dkt. 40 at 6 (description of body camera

28  segment nine as showing Keithly directing someone to "haul off" plaintiff's vehicles.).

United States District Court
Northern District of California

1   Among the exhibits supporting his complaint, plaintiff provides an invoice from "Jones

2   Towing" ("Jones") indicating that Jones towed his 1995 GMC vehicle on September 15,

3   2016.  Dkt. 40-4 at 1.  While the invoice states that "[y]our vehicle was towed by order of

4   Law Enforcement," id. at 2, it does not appear to explain the legal basis for such towing.

5   In so many words, plaintiff suggests that Keithly stole his vehicles.  Id.  ("In Property List

6   produced by Keithly for the case C16090164 does not list or even mention any of

7   plaintiff's stolen vehicles, as if Deputy Keithly has given himself a premature Christmas

8   gift.").

9        Again, because plaintiff's due process claim rests upon purported misconduct by

10  Keithly and California law provides an adequate post-deprivation remedy, plaintiff cannot

11  state a claim for a due process violation premised upon the alleged towing of his vehicle.

12  As a result, the court dismisses any claimed constitutional violation to the extent it rests

13  upon such alleged misconduct.

14              **c.    Cleariana's Removal from Plaintiff's Residence**

15       Plaintiff alleges that Keithly "ejected" plaintiff's adult daughter, Cleariana Leubner

16  ("Cleariana"), during the September 15, 2016 search.  Dkt. 38 at 17-18; Dkt. 38-1 at 4-5.[8]

17  Citing his daughter's removal, plaintiff claims that defendants violated his Fourteenth

18  Amendment substantive due process rights under the "special interests" protected by the

19  Constitution's "penumbras," as recognized by the United States Supreme Court in

20  Griswold v. Connecticut, 381 U.S. 479 (1965).  Dkt. 38 at 22; Dkt. 38-1 at 5; Dkt. 40-6 at

21  2.

22       The substantive due process rights articulated in Griswold concerned the scope of

23  the state's ability to regulate an individual's privacy interest, particularly, in that context, a

24  married couple's decision to use contraception.  The Griswold Court's protection of that

25  interest says nothing about plaintiff's right to prevent authorities from forcibly removing

26

27  ───────────────
    [8] In his description of the exhibits supporting his SAC, plaintiff purportedly attaches a
    "proposed letter of amicus curaie." Dkt. 38-1 at 1.  However, based on the court's review
28  of the various exhibits filed on this court's electronic docket, neither plaintiff nor Cleariana
    provided any such letter.

his adult daughter in the course of an authorized search.  Accordingly, the court

dismisses any Fourteenth Amendment claim premised upon this theory.

### d.    Failure to Proffer Exculpatory Evidence

Plaintiff alleges that, when seeking the warrant for his September 15, 2016 entry,

Keithly failed to provide the judge issuing the warrant with notice of plaintiff's right to

lawfully cultivate and use marijuana and that such failure improperly kept "exculpatory

evidence" from Judge Blum.  Dkt. 38 at 34.  Accordingly, plaintiff claims, Keithly violated

his due process rights.  Id.

For the same reasons provided above in Section B.1.a.i. rejecting plaintiff's theory

of a Fourth Amendment violation premised upon a theory of judicial deception, the court

dismisses any similar claim alternatively pled as a Fourteenth Amendment violation.

Graham v. Connor, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides

an explicit textual source of constitutional protection against this sort of physically

intrusive governmental conduct, that Amendment, not the more generalized notion of

"substantive due process," must be the guide for analyzing these claims.").

### e.    Failure to Receive a Pretrial Hearing

In his list of purported exhibits, plaintiff notes that, in connection with his criminal

proceedings, he "was entitled to a pretrial hearing, but one was not offered to him."  Dkt.

38-1 at 3.  In his SAC, plaintiff never alleged a § 1983 claim premised upon such a

violation or which constitutional right it arises under. To the extent plaintiff seeks to allege

a violation of his Fourteenth Amendment Due Process rights on the basis of such

purported deprivation, he must first identify an underlying California state authority that

entitles him to such a hearing.  Based on a vague reference tucked away in plaintiff's

exhibits (Dkt. 40-4 at 3), it appears he bases such entitlement upon People v. Mower, 28

Cal.4th 457 (Cal. 2001).

Plaintiff is correct that the California Supreme Court in Mower implicitly recognized

such a right when explaining that California Health and Safety Code § 11362.5

"reasonably must be interpreted to grant a defendant a limited immunity from

United States District Court
Northern District of California

1   prosecution, which not only allows a defendant to raise his or her status as a qualified

2   patient or primary caregiver as a defense at trial, but also permits a defendant to raise

3   such status by moving to set aside an indictment or information prior to trial on the

4   ground of the absence of reasonable or probable cause to believe that he or she is

5   guilty." 28 Cal. 4th at 464.

6        That said, plaintiff attaches at least three sets of court minutes showing his

7   appearance in the criminal proceeding—a December 5, 2016 "entry of plea and setting"

8   before Judge Michael Lunas, Dkt. 40-2 at 2, a January 17, 2017 "disposition or setting"

9   before Judge Lunas, id. at 6, and another February 6, 2017 "disposition or setting" before

10  that same judge, id. at 5.  More importantly, ***immediately*** before each of these attached

11  minutes, plaintiff includes a one-page excerpt of a "motion to offer defendant's affirmative

12  defenses or defenses" that describes the medicinal marijuana-related affirmative defense

13  contemplated by Mower. Dkt. 40-2 at 1.  While that excerpt does not expressly reference

14  plaintiff's name, the court can only infer that plaintiff presented that motion—or at least

15  had the opportunity to present that motion—at one of the above three referenced

16  proceedings before Judge Lunas.  Because of the obvious inconsistency between

17  plaintiff's summary assertion that he was deprived of a pretrial hearing and the very

18  documents attached to his complaint that detail the judicial process received, plaintiff

19  cannot allege any Fourteenth Amendment claim premised upon such purported

20  deprivation.  Accordingly, this court dismisses any such claim.

21       **4.    Plaintiff Fails to State a Constitutional Claim Premised Upon the**

22            **Various Challenges Brought Outside His Operative Pleading**

23       In the exhibits filed in support of his SAC, plaintiff attaches certain documents with

24  in-line handwritten criticisms that appear to be additional allegations in support of his

25  various constitutional claims.  To the extent possible, the court analyzes each in turn.

26       First, plaintiff attaches a copy of a "Summary of Lake County Marijuana Cultivation

27  Regulations."  Dkt. 40-1 at 1.  Plaintiff argues that certain provisions concerning general

28  setback obligations and special rules applicable to collectives are "contradictory."  Id.

United States District Court
Northern District of California

1   That criticism is misplaced.  The "Setbacks" provision provides that its conditions do not

2   apply to collectives.  Id. ("With exception of cultivation by collectives (see below) . . .).

3       Plaintiff fails to explain any basis for his remaining critiques, which, in large part,

4   appear to suggest that Ordinance 2997 unfairly favors "wealthy people."  Id. at 2-6.  In

5   any event, as a creature of the State of California, Lake County maintains certain

6   authority to regulate the health, education, and welfare of its citizens.  As a general

7   matter, a county's exercise of such authority is consistent with an individual's federal

8   constitutional rights.  Stengel v. Medtronic Inc., 704 F.3d 1224, 1228 (9th Cir. 2013)

9   ("'The historic police powers of the State include the regulation of health and safety. . . .

10  Throughout our history the several States have exercised their police powers to protect

11  the health and safety of their citizens. Because these are 'primarily, and historically, ...

12  matter[s] of local concern,' the 'States traditionally have had great latitude under their

13  police powers to legislate as to the protection of the lives, limbs, health, comfort, and

14  quiet of all persons.'").  On its face, Ordinance 2997 appears to fall within the traditional

15  bounds of that lawful authority and plaintiff fails to proffer any authority or specific

16  argument to the contrary.  Accordingly, to the extent plaintiff seeks to allege a

17  constitutional claim on grounds of the above referenced criticisms, the court dismisses

18  any such claim.[9]

19      Second, plaintiff suggests that Keithly violated his Fifth Amendment right to a

20  warning under Miranda v. Arizona, 384 U.S. 436 (1966).  Dkt. 40 at 2 (plaintiff's

21  description of body camera segment two as showing Keithly arresting plaintiff for the third

22  time "and does not give him Miranda rights.").   As the Ninth Circuit has recently

23  acknowledged, any claim premised upon such a violation is not actionable.  Fortson v.

24  Los Angeles City Attorney's Office, 852 F.3d 1190, 1192 (9th Cir. 2017) ("Fortson also

25  claims a violation of the Fifth and Fourteenth Amendments because he was never read a

26

27  [9] In his SAC, plaintiff includes a related, summary assertion that "defendant County of
    Lake . . . created and retained local ordinance, Article 72, which violates . . . his rights
28  under the equal access clause of the Fourteenth Amendment."  Dkt. 38 at 26.  For the
    same reasons noted above, the court dismisses any claim premised upon this assertion.

1   warning regarding his rights per <u>Miranda v. Arizona</u> . . . <u>Miranda</u> claims, however, are not

2   cognizable under 42 U.S.C. § 1983.").  Accordingly, the court dismisses any claim based

3   upon a plaintiff's non-receipt of a <u>Miranda</u> warning.

4        Finally, plaintiff suggests that Keithly improperly "seized" a cell phone from

5   plaintiff's residence in violation of an unspecified "US Supreme Court" ruling. Dkt. 40-6 at

6   9.  As previously noted, the warrant includes two exhibits, Exhibit A and Exhibit B.  Dkt.

7   41-1.  Exhibit B provides a list of items subject to confiscation.  <u>Id.</u> at 23.  That list

8   includes "electronic devices used to monitor law enforcement, cellular phone and

9   personal computers . . ."  <u>Id.</u>  Given the court's decision in Section B.1.a. that the subject

10  warrant is valid, any seizure of plaintiff's cell phone was lawful.  Accordingly, the court

11  dismisses any claim based upon an unlawfully seized cell phone.

12        **5.    Plaintiff Fails to State a <u>Monell</u> Claim Against Lake County**

13        "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or,

14  in other words, a municipality cannot be held liable under § 1983 on a *respondeat*

15  *superior* theory."  <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691

16  (1978) (emphasis in the original).  As this court previously noted, under <u>Monell</u>, "for a

17  municipality to be held liable, it must have committed the constitutional violation pursuant

18  to governmental custom or official municipal policy."  Dkt. 26 at 11.

19        To substantiate his <u>Monell</u> claim, plaintiff largely relies upon Lake County's alleged

20  practice of allowing its sheriff's department "to effectuate [] medical cannabis raids

21  without advance notice."  Dkt. 38 at 14.  Lake County is interested in allowing the sheriff

22  to continue this "accepted pattern and custom" because the sheriff's destruction of private

23  personal cannabis allows Lake County "to monopolize the growing of every single

24  marijuana plant within the territory of Lake County, so that money will be flowing in

25  coffers of Owners of this County."  <u>Id.</u> at 25.  Under plaintiff's theory, "[t]he aim of the

26  county was (or is) to annul a help which Proposition 215 ha[s] given . . . to individual

27  citizens and create commercial only growing for money."  <u>Id.</u> at 4.

28        Plaintiff also alleges that Lake County is in violation of an injunction entered by

United States District Court
Northern District of California

27

this court in <u>Allen v. County of Lake</u>, 14-3934-TEH (N.D. Cal.), which purportedly bars Lake County from engaging in "the summary abatement of medicinal marijuana in warrantless raids without previous Notice to be given to growers." <u>Id.</u> at 13, 25. According to plaintiff, Lake County has ignored and failed to correct the sheriff's misconduct since prior to <u>Allen</u> and at least through the time he filed his SAC.  Dkt. 38 at 25.  As specific examples of this supposed ongoing misconduct, plaintiff alleges that "[t]here was no previous Notice given to any of the three neighbors who were attacked by Task Force on the day of 9-15-16." <u>Id.</u> at 13.  He also describes two body camera segments from the September 15, 2016 search that purportedly show "neighbors attack[ed] by Task Force from a different angle.  Screaming, guns, confusion but no warrant given or shown." Dkt. 40 at 5.  Those segments also show misdirected officers (like "confused tourists," to be exact) threatening to kick down a neighbor's door pursuant to a warrant that fails to specify the address subject to search. <u>Id.</u>

Tucked away in his SAC, plaintiff asserts that Lake County also maintains negligent personnel oversight procedures by allowing its employees to disconnect its residents' electricity, Dkt. 38 at 16-17, and tow away lawfully parked vehicles.  Dkt. 38 at 23.  To substantiate this assertion, plaintiff states that some Lake County employee sent "cookie cutter notices" (terminating electricity and declaring homes uninhabitable) to "the other victims of the Task Force raid of 9-15-16," <u>id.</u> at 16, and that some "Director Kathy Freedman" (not named as a defendant in this action) improperly towed his legally parked vehicles in 2013, as well as various other vehicles owned by other unidentified individuals at some unspecified time.  <u>Id.</u> at 17.

Here, plaintiff fails to allege a <u>Monell</u> claim against Lake County.  As an initial matter, for the reasons provided above, plaintiff has not stated a cognizable constitutional violation against any of the individual defendants that would, in the first instance, provide a basis to assign liability to Lake County for maintaining an improper custom or policy.  More importantly, though, plaintiff fails to adequately allege that Lake County is engaged in a custom that tolerates the purported acts giving rise to the events at issue here.

1   While plaintiff does use the terms "custom" and "pattern" to describe the challenged

2   conduct, plaintiff fails to identify and advance any specific instances beyond the

3   September 15, 2016 events showing that such practices are routine.  Stated simply,

4   plaintiff's allegations that Lake County maintains a "custom" or "policy" of engaging in

5   searches without prior notice under Ordinance 2997 are conclusory.

6          In any event, even if Lake County maintained such a custom, that practice does

7   not come within the scope of the injunction issued in Allen.  As this court previously

8   noted, "[t]hat case . . . dealt with allegations that County of Lake performed warrantless

9   searches on marijuana growers." Dkt. 26 at 7 n.3 (emphasis in the original).  Here, the

10  challenged custom concerns the sheriff's engaging in a marijuana cultivation-related

11  search without first affording the searched party an opportunity to abate as contemplated

12  by Ordinance 2997.  Even if true, such a practice—i.e., a search without notice under

13  *local law*—is fundamentally different than conducting such a search without a warrant,

14  which is generally required by the United States Constitution.

15         Lastly, with respect to plaintiff's residual allegations that Lake County is negligently

16  allowing its employees to tow away lawfully parked vehicles and issue notices terminating

17  residents' electricity, the court concludes that such allegations fail to state a Monell claim.

18  Similar to the custom allegations underlying plaintiff's Fourth Amendment theory of a

19  Monell claim against Lake County, these allegations fail to adequately identify that the

20  challenged electricity termination and towing practices are routine.  Accordingly, the court

21  dismisses any Monell claims against Lake County.

22         **6.       Plaintiff Fails to State a Claim for Conspiracy**

23         Plaintiff further alleges that defendants "and other yet unnamed perpetrators []

24  conspired amongst themselves to injure the plaintiff and violate numerous of his

25  Constitutional rights." Id. at 23.  As decided above, plaintiff has failed to state a claim

26  against defendants for violation of his constitutional rights.  Accordingly, plaintiff's

27  conspiracy claim fails and is dismissed.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 7.    The Court Dismisses Plaintiff's Claims With Prejudice

A district court "should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations," however, dismissal without such leave "is proper if it is clear that the complaint could not be saved by amendment." <u>Somers</u>, 729 F.3d at 960.

In its February 15, 2019 order, the court allowed plaintiff the opportunity to amend his pleadings "to attempt to state a civil rights claim based on the First Amendment, the Fourth Amendment, the Eighth Amendment, or the Fourteenth Amendment."  Dkt. 26 at 12.  Plaintiff took that opportunity when he filed his SAC. Plaintiff proffered multiple theories to support his various claims for violations of these constitutional amendments. The court has thoroughly considered the allegations in plaintiff's amended pleading and, for the reasons provided above, decided that they fail to state an actionable claim.  Given that, the court concludes that allowing plaintiff any further opportunity to amend his claims would be futile.  Accordingly, the court dismisses the SAC with prejudice.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **GRANTED** and this action is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: June 22, 2020

/s/ Phyllis J. Hamilton

PHYLLIS J. HAMILTON
United States District Judge

30